# Exhibit 1

BEFORE THE OKLAHOMA STATE BOARD OF EDUCATION

**STATE OF OKLAHOMA, EX REL.**
**STATE DEPARTMENT OF EDUCATION**
    Applicant,

vs.

2023-02

**SUMMER BOISMIER,**
    Respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

On June 21, 2023, a hearing on the application to revoke Respondent Summer Boismier's teaching certificate was held before the undersigned. The State Department of Education (hereinafter "Applicant") was represented by Bryan Cleveland, and Summer Boismier (hereinafter "Respondent") appeared with Counsel, Brady Henderson. Evidence and argument from Applicant and Respondent were received into the record. Testimony was taken from Holly Nevels, Hallie Wright, and Respondent. Applicant's exhibits 1, 2, 3, 4, 5, 6, 7, 8, and 10 were admitted into evidence.

Upon consideration of the Record, the undersigned makes the following Findings of Fact, Conclusions of Law, and Recommendation.

### Findings of Fact

1. Respondent holds a valid Oklahoma teaching certificate (the "Certificate"), number 418154. *See* Exhibit 1.

2. Respondent currently holds standard certification in English (Grades 5-12). *Id.*

3. Respondent's most recent employment in Oklahoma was as a teacher under a temporary contract at Norman Public Schools ("District"). *See* Revocation Hearing Transcript ("Transcript") 14:17 through 15:1 and 33:22 through 34:9, June 21, 2023.

4. Respondent resigned from employment with the District on August 23, 2022, with an effective date of August 24, 2022. *See* Exhibit 2.

5. During the summer of 2022, the District notified all teachers of guidance for review of library books. *See* Transcript 13:3-10. The protocol for classroom libraries was outlined in the Norman Public Schools Classroom Libraries guidance. *See* Exhibit 4.

6. The District's guidance required that teachers review the books in their classroom libraries and either remove any books possibly contravening the guidance or cover the books until they had time to review them. *See* Transcript 13:11 through 14:1; Exhibit 4.

7. On August 19, 2022, a parent complained to the District about Respondent. *See* Transcript 15:2-14; 30:20-24. The complaint concerned a display in Respondent's classroom and comments made by Respondent during a high school class; the class included that parent's child. *See id*; *See* Transcript 15:15-23.

8. Witnesses testified that the complaint alleged Respondent "used her classroom as a space for politics," and "shared some personal opinions about that pause about some recent legislation." Transcript 30:25 through 31:2; 15:19-20. No corroborating evidence was presented about the specific political topics, legislation, or other subjects discussed in her classroom.

9. On August 19, 2022, the District's staff reported the complaint to Holly Nevels, the Associate Superintendent and Chief Human Resources Officer for the District. *See* Transcript 12:1-3; 15:5-8.

10. Nevels asked the District administrators who received the complaint to go to Respondent's classroom and investigate the claims. *See* Transcript 16:1-4.

11. In the classroom, District staff observed that the bookshelves were covered in red bulletin board paper with messages written in black marker. *See* Transcript 16:15-17; Exhibit 3. The messages stated, "Books the state doesn't want you to read." Exhibit 3. Copies of a QR code were also taped to the papers, with arrows pointing to handwritten text that read, "Definitely don't scan." *Id*.

12. The QR codes in the classroom linked to the web address of the Brooklyn Public Library's website where students could apply for a free library card. *See* Transcript 41:21-23.

13. The Brooklyn Library is based in New York and has thousands of items in its catalog. *See* Transcript 66:14 through 67:10. The website also contains numerous booklists on various topics. *See* Transcript 65:5-13.

14. Among those booklists, the Brooklyn Public Library also maintains a "BKLYN Books UnBanned List" with a collection of books that are available in eBook or audiobook to any card holder. *See* Exhibit 8.

15. Disputed evidence was offered that Respondent possessed a copy of *Gender Queer*. One witness testified she recalled seeing it, while Respondent denies having a copy of it. *See* Transcript 31:6-8; 65:14-20. No corroborating evidence of its existence in the classroom, like a photograph, was introduced.

16. If a copy of *Gender Queer* did exist in Respondent's classroom library, it was covered from students' view with opaque paper with the rest of the classroom library books, per

District guidelines. *See* Transcript 17:23 through 18:4; 33:2-7; Exhibit 3.

17. Respondent posted the QR code because she "had seen other teachers online talking about this, that the library was offering all students ages 13 to 21 in the United States access to a free e-library card that would give them access to the library's books unbanned program." Exhibit 10.

18. Applicant introduced evidence of Respondent vocally expressing her opposition to HB 1775 to the media; however, no evidence was provided as to whether Respondent specifically expressed opposition to HB 1775 in her classroom. *See* Transcript 22:7 through 23:2; 25:1-10.

19. Applicant introduced portions of the contents of three books at the revocation hearing: *Gender Queer*, *Lawn Boy,* and *Stamped,* which appear on the "banned books" list. *See generally* Transcript 44:1 through 61:25.

20. *Gender Queer* and *Lawn Boy* deal with specific issues of sexuality, while *Stamped* deals with issues of racism. *See generally* Transcript 44:1 through 61:25.

21. No evidence was offered that Respondent used any of the identified books in student instruction. *See* Transcript 66:1-13.

22. No evidence was offered that Respondent shared any of the identified books with any students. *See* Transcript 34:10-14; 66:1-13.

23. No evidence was offered that any student accessed, attempted to access, or was provided with access to any of the identified books. *See* Transcript 34:15-18.

24. No evidence was offered identifying any student who Respondent encouraged to read any of the identified books.

25. Any finding of fact that is more properly characterized as a conclusion of law is hereby incorporated as a conclusion of law.

## Conclusions of Law

1. The State Board of Education ("Board") is vested with the "supervision of the public school system of Oklahoma." 70 O.S. § 3-104(A).

2. The Board is vested with "authority in matters pertaining to the licensure and certification of persons for instructional, supervisory, and administrative positions and services in the public schools of the state." 70 O.S. § 3-104(A)(6).

3. The Board "shall formulate rules governing the issuance and revocation of certificates for superintendents of schools, principals, supervisors, librarians, clerical employees, school nurses, school bus drivers, visiting teachers, classroom teachers, and for other personnel

3

performing instructional, administrative, and supervisory services." *Id.*

4. Pursuant to Oklahoma Administrative Code ("OAC") § 210:1-5-6(b)(1) through (4), "A certificate shall be revoked only for:

> (1) A willful violation of a rule or regulation of the State Board of Education, or the United States Department of Education; or
> (2) A willful violation of any federal or state law, or
> (3) A conviction for any of the offenses or bases for revocation set forth in 70 O.S. §§ 3-104 or 3-104.1; or
> (4) For other proper cause, including but not limited to violation of the Standards of Performance and Conduct for Teachers at Chapter 20, Subchapter 29 of this Title."

## Count One

5. The Standards of Performance and Conduct for Teachers ("Standards") provide that "[i]n recognition of the magnitude of the responsibility inherent in the teaching process and by virtue of the desire for the respect and confidence of their colleagues, students, parents, and the community, teachers are to be guided in their conduct by their commitment to their students and their profession." OAC § 210:20-29-2.

6. The Standards further provide that the teacher "[s]hall make reasonable effort to protect the student from conditions harmful to learning or to health and safety." OAC § 210:20-29-3(b)(4).

7. The Standards further provide that the teacher "shall exert every effort to raise professional standards, fulfill professional responsibilities with honor and integrity, promote a climate that encourages the exercise of professional judgment, achieve conditions which attract persons worthy of the trust to careers in education, and assist in preventing the practice of the profession by unqualified persons." OAC § 210:20-29-4(b).

8. The Standards further provide that a teacher may be dismissed or not reemployed for "[a]ny reason involving moral turpitude." OAC § 210:20-29-5(a)(7).

9. "Moral turpitude implies something immoral in itself, regardless of the fact whether it is punishable by Law." *Ballard v. Indep. Sch. Dist. No. 4, Bryan Cnty.*, 2003 OK 76, ¶ 10, 77 P.3d 1084, 1087 (quoting *State ex rel. Oklahoma Bar Ass'n v. Jones*, 1977 OK 118, ¶ 7, 566 P.2d 130, 132).

10. Examples of cases in which Oklahoma courts found moral turpitude justifying the dismissal of teachers are distinguishable from the facts established in this case. *See House v. Ind. Sch. Dist. I-29, Muskogee Cnty.*, 1997 OK 35, 939 P.2d 1127 (falsifying disciplinary reports constitutes moral turpitude); *Hill v. Ind. Sch. Dist. No. 25, Adair Cnty.*, 2002 OK CIV APP 97, 57 P.3d 882 (altering transcripts constitutes moral turpitude); *Andrews v. Ind. Sch. Dist. No. 57*, 2000 OK CIV APP 103, 12 P.3d 491

(romantic relationship with minor student constitutes moral turpitude). *Cf. Ballard*, 2003 OK 76, 77 P.3d 1084 (making unexecuted threats against school superintendent and another teacher outside the general purview of the students does not constitute moral turpitude); *Hawzipta v. Ind. Sch. Dist. No. I-004, Noble Cnty.*, 2000 OK CIV APP 113, 13 P.3d 98 (mistakenly publishing false information that principal had ordered pornographic material found in school's dumpster does not constitute moral turpitude).

11. Based on the testimony and evidence presented, as reflected above in the Findings of Fact, Applicant has failed to prove by clear and convincing evidence that Respondent willfully committed an act of moral turpitude or has violated the Standards.

12. Specifically, there was no evidence presented that Respondent used the three identified books – *Gender Queer*, *Lawn Boy*, or *Stamped* – in class instruction or otherwise shared the books with students. Furthermore, the evidence showed that the QR code shared by Respondent linked to a library card application page, and there was no evidence presented that any of Respondent's students obtained a Brooklyn Public Library card or accessed any books through the Brooklyn Public Library.

## Count Two

13. The Board's rules provide that "[i]t shall be the policy of the Oklahoma State Board of Education to prohibit discrimination on the basis of race or sex in the form of bias, stereotyping, scapegoating, classification, or the categorical assignment of traits, morals, values, or characteristics based solely on race or sex." OAC § 210:10-1-23(a).

14. The Board's rules prohibit any Course that instructs students that "[m]embers of one race or sex cannot and should not attempt to treat others without respect to race or sex." OAC § 210:10-1-23(c)(4).

15. The Board's rules also prohibit any Course that instructs students that "[m]eritocracy or traits such as a hard work ethic are racist or sexist or were created by members of a particular race to oppress members of another race." OAC § 210:10-1-23(c)(8).

16. Course is defined as "any program or activity where instruction or activities tied to the instruction are provided by or within a Public School, including courses, programs, instructional activities, lessons, training sessions, seminars, professional development, lectures, coaching, tutoring, or any classes." OAC § 210:10-1-23(b)(1)(B).

17. Based on the testimony and evidence presented, as reflected above in the in the Findings of Fact, Applicant has failed to prove by clear and convincing evidence that Respondent has willfully violated OAC § 210:10-1-23(a), OAC § 210:10-1-23(c)(4), or OAC § 210:10-1-23(c)(8).

18. Specifically, there was no evidence presented that *Stamped* was in Respondent's classroom, that Respondent used *Stamped* in class instruction or activity, or otherwise shared the book with students. Furthermore, the evidence showed that the QR code shared

5

by Respondent linked to a library card application page, and there was no evidence presented that any of Respondent's students obtained a Brooklyn Public Library card or accessed any books through the Brooklyn Public Library.

19. Any conclusion of law which is more properly characterized as a finding of fact is hereby incorporated as a finding of fact.

## Recommendation

Based upon the above findings of fact and conclusions of law, Respondent's teaching certificate **shall not** be revoked.

Dated this 8th day of August, 2023.

Liz Stevens
Hearing Officer