**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SUMMER BOISMIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-1297-R** |
| | ) | |
| **OKLAHOMA STATE BOARD OF EDUCATION, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court are two Motions to Dismiss Ms. Summer Boismier's second-amended Complaint. State Defendants—the Oklahoma State Board of Education, Oklahoma State Department of Education, and Oklahoma Superintendent of Public Instruction—filed the first. [Doc. No. 46]. And the Individual Defendants—Ryan Walters, Sarah Lepak, Zachary Archer, Donald Burdick, Katie, Quebedeaux, and Kendra Wesson—filed the second. [Doc. No. 47]. The Court GRANTS IN PART the State Defendants' motion and GRANTS the Individual Defendants' motion.

**BACKGROUND**

Summer Boismier was a teacher; now she isn't. The reason—she contends—is that the Defendants named here unlawfully stripped her of her teaching certificate. As a result, she sued the Oklahoma State Board and Department of Education and the State Superintendent in his official capacity for injunctive, declaratory, and monetary relief. She

also sued six individual Defendants—former members of the Board—in their individual capacities, for declaratory and monetary relief.

But none of Ms. Boismier's merits-based arguments are relevant to the Court's Order. Each Defendant says they're immune for their actions. The Board, Department, and Superintendent claim Eleventh-Amendment immunity; the former Board members claim absolute immunity.

**SUMMARY OF THE CLAIMS**

Ms. Boismier brings seventeen claims for relief against nine Defendants. In claims One through Twelve, she seeks an injunction against the State Defendants, money from the former Board Members, and a declaration against everyone alleging various violations of federal law. Claims Thirteen through Seventeen arise under state law, and Ms. Boismier seeks injunctive, declaratory, and monetary relief against all Defendants.[1]

**LEGAL STANDARD**

Ms. Boismier's complaint must contain "a short and plain statement of the claim showing that [she] is entitled to relief." FED R. CIV. P. 8(a)(2). To show entitlement to relief, and survive a motion to dismiss, she must show her claims' facial plausibility—something greater than mere possibility and less than conclusive proof. *GreenLatinos v. Suncor Energy (U.S.A.) Inc.*, 184 F.4th 1171, 1179 (10th Cir. 2026); *McNellis v. Douglas*

[1] Ms. Boismier brings Claim Thirteen against only the State Defendants and Claim Seventeen against only the former Board Members. Each of Ms. Boismier's state-law claims must satisfy the rules outlined in Oklahoma's Government Tort Claims Act. OKLA. STAT. tit. 51 § 153(B).

*Cnty Sch. Dist.*, 116 F.4th 1122, 1132 n.6 (10th Cir. 2024). At this stage, the Court considers only the complaint, assumes that Ms. Boismier's well pleaded factual allegations are true, and "draw[s] all reasonable inferences in [her] favor." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

## DISCUSSION

### I. The Board and the Department are entitled to Eleventh-Amendment immunity.

The Eleventh Amendment immunizes the states against suits in federal court.[2] *Good v. Dept. of Educ.*, 121 F.4th, 772, 788 (10th Cir. 2024). This "jurisdictional bar" applies just the same in suits against "arms of the state." *Id.* at 789. But what constitutes an arm of the state can be a vexing question. *See id.* at 788–89 (citing five cases where courts disagreed about whether a particular entity was an arm of the state of Missouri). But here, the Board and the Department are plainly arms of the State of Oklahoma.

To determine whether the Board or Department have Eleventh-Amendment immunity, they hold the burden to show, first, that their (1) character and (2) degree of

[2] There are two exceptions to Eleventh-Amendment immunity: A state may consent to suit, often via statute, or Congress may abrogate the states' immunity on a particular issue. *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010). Congress did not abrogate immunity for either of the federal laws under which Ms. Boismier sues: 42 U.S.C. § 1983, *id.*, or § 1985, *Seibert v. Oklahoma ex rel. Univ. of Okla. Health Sciences Ctr.*, 867 F.2d 591, 594 (10th Cir. 1989), *partially abrogated on other grounds by Fed. Lands Legal Consortium ex rel. Robart Est.*, 195 F.3d 1190 (10th Cir. 1999), and Oklahoma did not consent to suit under the GTCA, *see* OKLA. STAT. tit. 51 § 152.1(B); *Hensel v. Off. of Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994). So the Court focuses only on whether the Board or the Department are entitled to Eleventh-Amendment immunity in the first place.

autonomy under state law, (3) finances, and (4) presence in local or state-wide affairs each weigh in favor of arm-of-the-state status under Oklahoma law.[3] *Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 524; 528 (10th Cir. 2022). If the analysis of these factors points in different directions,[4] the Court then proceeds to a second step, considering the twin aims of the Eleventh Amendment: (1) "Avoiding an affront to the dignity of the state" and (2) "the impact of a judgment on the state treasury." *Good*, 121 F.4th at 792–94.

**A. Character Under State Law**

The first factor requires a "formalistic survey of [Oklahoma] law," the goal of which is to determine whether the Board and the Department are "agenc[ies]" of the State of Oklahoma. *Good*, 121 F.4th at 798–99. Relevant to this survey are statutes, constitutional provisions, and court decisions. *Id.*

The Board is an agency under Oklahoma Law. OKLA. CONST. art. XIII, § 5; OKLA. STAT. tit. 70 § 1-105(B). ("The State Board of Education is that agency in the State

---

[3] This inquiry is controlled by federal law, but the Court nonetheless must "refer[] to the particular state laws characterizing the [Board and Department]." *Hennessey*, 53 F.4th at 528 (citation modified).

[4] Ms. Boismier asserts that, rather than proceeding to step two, if the analysis of the four factors points in different directions, the Court should simply not decide this question "at this stage." Doc. No. 52 at 10 (citing *Hennessey*, 53 F.4th at 531). But in *Hennessey*, the Tenth Circuit was discussing how and when to raise the Eleventh Amendment issue sua sponte. *Hennessey*, 53 F.4th at 531. Indeed, where the parties fail to raise the issue, or the evidence to answer this question isn't readily available, it might make sense to wait. *Id.* But here, the Board and the Department have raised the issue and presented dispositive evidence, so the Court can, and must, address this argument. FED. R. CIV. P. 12(h)(3).

Department of Education which shall be the governing board of the public school system of the state.”).

The Department is also an agency. Oklahoma statutes create the Department for the purpose of housing the Board and other agencies and declare that “[t]he public school system in Oklahoma shall be administered by the [Department].” OKLA. STAT. tit. 70 §§ 1-105(A); 1-115. Factor one favors immunity for the Board and Department. [5]

**B. Autonomy**

On the second factor, the more autonomy the Board or Department has, the less likely they are to be immune. *Good*, 121 F.4th at 803. The Board has 7 members, 6 of whom the Governor appoints “with the advice and consent of the Senate”; the Superintendent serves as the seventh member and chairperson. OKLA. STAT. tit. 70 § 3-101(A). This level of appointment power supports immunity but “is not decisive . . . because the power to appoint is not the power to control.” *Good*, 121 F.4th at 803 (citation modified). But the Governor’s power over the Board goes farther; Board members “serve at the pleasure of the Governor,” rather than being subject to only for-cause removal. § 3-101; *Good*, 121 F.4th at 804 n.19 (“To be sure, an at-will removal power would weigh more strongly against autonomy than the for-cause removal power that the Governor has here.”).

[5] The Superintendent’s entitlement to immunity from money damages is coextensive with that of the Board and the Department because Ms. Boismier sued him in his official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

And although the Board has the power to "adopt policies and make rules for the operation of the public school system . . . ," those rules are subject to approval from the state legislature and the Governor. OKLA. STAT. tit. 70 § 3-104(A); OKLA. STAT. tit. 75 § 308(E). So this factor favors immunity. *But see Good*, 121 F.4th at 804 (concluding that if an entity isn't subject to a gubernatorial veto, that fact suggests autonomy and "undercuts" immunity).

Additionally, because the Department is "control[led] . . . and direct[ed]" by the Superintendent, an officer with "[t]he Executive authority of the state," the second factor also weighs in favor of immunity for the Department. OKLA. STAT. tit. 70 § 3-107.1; OKLA. CONST. art. VI, § 1.

**C. Finances**

The third factor demands an analysis of an entity's finances, considering (1) the degree of financial assistance from the state, (2) the entity's ability to independently generate revenue—usually through taxes—and (3) whether the entity's funds are considered public funds. *Good*, 121 F.4th at 809–13. More financial assistance, independent taxing authority, and coffers designated as "public," all weigh in favor of immunity. *Id.*

The Board submits an annual budget to the Governor for the Department. OKLA. STAT. tit. 70 § 3-104(A)(3). And although some of the Department's budget comes from tax revenue, neither the Board nor the Department appears to have any independent

authority to levy taxes on their behalf.[6] *See* OKLA. STAT. tit. 68 § 1353(A)(2). That authority, if any, appears to lie with individual school districts, which are independent from the State Board and Department. OKLA. CONST. art. X, § 9(a–b) (permitting local school districts to levy taxes but prohibiting the use of "ad valorum tax[es] . . . for State purposes"); OKLA. STAT. tit. 70 § 5-105. As a result: (1) the Board and Department seem to rely completely on the State for their funding, (2) lack the ability to independently generate revenue, and, since their coffers hail directly from the State treasury, (3) administer only "public" funds. So this factor too favors immunity. *Cf. Good*, 121 F.4th at 813; 817 (concluding that an entity's (1) lack of state-provided financial assistance, (2) ability to "issue bonds" on its own behalf, and (3) statutory language indicating that its revenue and assets were not public funds weighed against immunity).

**D. Local or State Affairs**

The final factor favors immunity. The Board sets statewide policy, and the Department operates under the Superintendent to fulfill that policy. OKLA. STAT. tit. 70 § 3-104(A)(1); § 3-107. Unlike local school districts and boards, to which the Eleventh Amendment does not apply, the Board and Department focus on state-wide affairs. *See, e.g.*, *Carter v. Indep. Sch. Dist. No. 6 of Sequoyah Cnty*, 550 F. Supp. 172, 173 (W.D. Okla. 1981); *see also id.* n.1 ("Plaintiffs are not seeking monetary damages against the State

---

[6] Nor can the Board or Department issue bonds on their behalf; that power seems reserved to local districts and boards. OKLA. STAT. tit. 70 § 15-101; *but see Hennessey*, 53 F.4th at 535 (concluding that a State Hospital's inability to levy taxes was "of minimal weight in the calculus" because it "c[ould] issue bonds").

Department of Education as such relief would be barred by the 11th Amendment to the United States Constitution."). The Board's membership also hails from every corner of the state. OKLA. STAT. tit. 70 § 3-101(A) (requiring one Board member from each of Oklahoma's five Congressional districts and one at-large member); *but see Couser v. Gay*, 959 F.3d 1018, 1030 (10th Cir. 2020) (concluding that Kansas Sheriffs were local officials because they were locally elected). The Board and the Department are therefore engaged in statewide affairs, and the Court concludes that all four factors favor immunity.

Because the factors all point in one direction, the Court need not proceed to step two. *Good*, 121 F.4th at 792 ("If all of these factors point in the same direction, that is the end of the analysis."). So the Court concludes that both the Board and Department are arms of the state of Oklahoma entitled to Eleventh-Amendment immunity and DISMISSES each claim against them (Claims 1–16).[7]

---

[7] Ms. Boismier argues that Oklahoma waived its Eleventh-Amendment immunity in the GTCA. But the GTCA says the opposite. OKLA. STAT. tit. 51 § 152.1(B) ("In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment . . . ."). Ms. Boismier devotes three pages of her brief, arguing that the GTCA is actually distinguishing between state-law claims—which can be brought against the State pursuant to the GTCA—and federal-law claims—which cannot. She's right. Under the GTCA, Oklahoma is liable, if at all, "only where . . . a private person . . . would be liable for money damages under the laws of [Oklahoma]." OKLA. STAT. tit. 51 § 153(A). But that distinction doesn't matter in federal court. *Harris v. Oklahoma Off. of Juv. Affs. ex rel. Cent. Oklahoma Juv. Ctr.*, 519 F. App'x 978, 980 (10th Cir. 2013) ("The waiver of immunity in the [GTCA] extends only to the State of Oklahoma's immunity in its *own* courts. The [GTCA] does not contain an explicit waiver of the State's Eleventh Amendment immunity—immunity which applies only in *federal* court.").

## II. The Superintendent[8]

To sue the Superintendent is to sue the State. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). But sometimes the Eleventh Amendment yields where a party seeks prospective injunctive relief against the state officer or officers tasked with carrying out a particular act. *Ex parte Young*, 209 U.S. 123 (1908). To determine which of Ms. Boismier's five claims for relief should proceed, the Court "conduct[s] a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (citation modified).

Ms. Boismier seeks five kinds of relief characterized as either injunctive or declaratory, asking the Court to:

1. Order the Superintendent to reinstate her teaching certificate;
2. Enjoin the Superintendent from unlawfully revoking her teaching certificate again;
3. Enjoin the Superintendent from applying HB 1775[9] or its implementing regulations against her;
4. Declare that the Superintendent's revocation of her teaching certificate was unlawful; and

[8] The parties dispute whether the Superintendent is a qualified "person" under 42 U.S.C. § 1983 or § 1985. But "[o]f course a state official in his or her official capacity, when sued for injunctive relief, [is] . . . a person under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 60, 71 n.10 (1989). The same is true for § 1985. *Sherratt v. Braithwaite*, No. 24-4101, 2026 WL 1100879, at *3 (10th Cir. Apr. 23, 2026); *see Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) ("[I]dentical words used in different parts of the same Act are intended to have the same meaning.").

[9] HB 1775 is an Oklahoma law that Ms. Boismier claims is unlawful and was unlawfully used against her. OKLA. STAT. tit. 70 § 24-157.

5. Declare that "[she] did not engage in any conduct that would justify revoking her teaching certificate."

Doc. No. 44 at 48.

**A. The Court needs further clarification on an unbriefed issue.**

Ms. Boismier's first and second requests could be prospective, which would solve the Eleventh-Amendment problem. Even so, there may be a second jurisdictional issue with these requests, and the Court might need to abstain from deciding them.

The parties discuss at some length whether the Court should dismiss[10] Ms. Boismier's claims in the interest of "comity," a doctrine requiring federal courts to respect state courts by occasionally deferring where the state court is "already cognizant" of a particular dispute. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). Although the Superintendent fails to persuade the Court on this comity argument, a related one might apply: Abstention under *Younger v. Harris*. 401 U.S. 37 (1971). That practice demands that federal courts abstain from deciding issues currently in dispute in state court where the effect of the federal court's ruling would be to "enjoin or otherwise interfere with" the state proceeding. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 672 (10th Cir. 2020). And though the Supreme Court originally cabined it to criminal cases, *Younger* now applies to "civil proceedings involving certain orders that are uniquely in furtherance of the state

[10] Even if the Court abstains, it will stay—not dismiss—the action. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). ("[W]e have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether.").

courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).[11]

Ms. Boismier appealed the Board's revocation of her certificate, and it's still pending in State Court. *See Boismier v. Okla. State Bd. of Educ.*, No. CV-2024-2884 (Okla. Cnty Dist. Ct.). And since her first and second requests for relief would, if granted, cause some level of interference with this state proceeding, the *Younger* issue is fairly presented. But neither party discussed the issue in their briefing, so the Court ORDERS the Superintendent and Ms. Boismier to supplement their briefing on the following question: Whether the Court ought to abstain under *Younger*, and stay its decision on the two requests, until Ms. Boismier's ongoing state proceeding is resolved.[12]

**B. Ms. Boismier fails plausibly to allege that HB 1775 is unconstitutional.**

Ms. Boismier's third request—that the Court order the Superintendent not to apply HB 1775's "unconstitutional sections" against her—is prospective. But there's another problem; Ms. Boismier assumes in her Complaint that portions of HB 1775 are unconstitutional. This was plausibly true when the parties briefed the Motions. *See Black*

[11] The Court raises this issue sua sponte because, like the Eleventh-Amendment inquiry, *Younger* abstention is jurisdictional. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10–11 (1987); *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004) ("[The Court] may address jurisdictional issues in any order [it] find[s] convenient."). *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1231 (10th Cir. 2013) ("[A] court may raise the issue of abstention sua sponte.") (citation modified).

[12] Because the Superintendent is but one of seven votes on the Board, if the Court ultimately declines to abstain, it will consider at that time whether to permit Ms. Boismier to amend her complaint to join as parties the current members of the Board in their official capacities.

*Emergency Response Team v. Drummond*, No. 24-6139, 2026 WL 2654160, at *4 (10th Cir. Sept. 9, 2026). But no longer. The Tenth Circuit reversed a district-court order, which had concluded that parts of HB 1775 were void for vagueness. *Id.* at *13. Because Ms. Boismier's Complaint includes no additional allegations or arguments about why HB 1775 might be unconstitutional, the Court DISMISSES this claim.

### C. The Superintendent is immune from suit for retroactive relief requests.

Ms. Boismier's fourth and fifth requests, however, must fail because "*Ex parte Young* may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *K.A. v. Barnes*, 134 F.4th 1067, 1075 (10th Cir. 2025) (citation modified). The Court thus lacks the power to declare either that the Superintendent's revocation of her certificate *was* unlawful or that her conduct *did not* justify "revoking her teaching certificate." Doc. No. 44 at 48; *K.A.*, 134 F.4th at 1072, 1075 (concluding that the court lacked jurisdiction over claims asking it to declare that a prior deprivation of parental rights was unlawful); *Chilcoat v. San Juan Cnty*, 41 F.4th 1196, 1215 (10th Cir. 2022) (concluding that the Eleventh Amendment barred a federal court from declaring that an alleged retaliatory prosecution was unlawful). The Court therefore DISMISSES Ms. Boismier's two claims for declaratory relief.

### D. The Eleventh Amendment bars the remaining state-law claims against the Superintendent.

Ms. Boismier's remaining claims against the Superintendent, alleging violations of state law, do not survive. The reason: the Superintendent is not the proper person to be sued. Oklahoma law funnels all tort claims against the State and its agencies, subdivisions,

and employees, through the Government Tort Claims Act. OKLA. STAT. tit. 51 § 153(B). So the GTCA controls the state-law claims Ms. Boismier levies against the Superintendent. Doc. No. 44 at 43–47. And when a plaintiff sues an officer of the state in their official capacity, the GTCA instructs that the proper defendant is the entity on behalf of which the officer acts. *Id.* § 163(C); *Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008) (concluding that summary judgment was proper for state-law tort claims against a county court clerk named in her official capacity because the proper defendant was the County itself). To the extent that Ms. Boismier brings state-law claims against the Superintendent, that's a suit against the State, and the Court must dismiss the claims under the Eleventh Amendment. *Foreman v. Elam*, No. CIV 18-071-RAW-SPS, 2019 WL 1413755, at *2 (E.D. Okla. Mar. 28, 2019).[13] So the Court DISMISSES Ms. Boismier's state-law claims, 13–16, against the Superintendent.

## II. The Court DISMISSES Ms. Boismier's claims against the former Board Members because they are absolutely immune.

The Court now considers Ms. Boismier's claims against the former Members of the Board: Ryan Walters, Sarah Lepak, Zachary Archer, Donald Burdick, Katie Quebedeaux, and Kendra Wesson. Doc. No. 44 at 10–16. All sixteen claims fail. [14]

[13] The Court need not reach the parties' arguments on whether three of the GTCA's many exceptions to the general waiver of sovereign immunity apply in this case. This is because the Eleventh Amendment's broad sweep bars all Ms. Boismier's claims, save her claims "seek[ing] only prospective, injunctive relief." *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008).

[14] The Court resolves these claims on absolute, quasi-judicial immunity, which covers both federal- and state-law claims. While Ms. Boismier argues that absolute immunity only applies, if at all, to the federal claims, quasi-judicial immunity applies both to state and

To protect the independence of quasi-judicial bodies, members of an administrative board sometimes deserve absolute immunity. *Horwitz v. State Bd. of Med. Examiners of Colo.*, 822 F.2d 1508, 1511 (10th Cir. 1987). This kind of immunity is broad. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). But it only applies in "exceptional" circumstances. *Butz v. Economou*, 438 U.S. 478, 507 (1978). Determining whether those circumstances exist requires the Court to consider the following:[15]

1. Did the Board Members rely on precedent to revoke Ms. Boismier's certificate?
2. Do the Board Members need insulation from political influence or to protect against harassment or intimidation?
3. How similar are the Board Members' functions here to the judicial process generally?
4. Are there "sufficient safeguards in the regulatory framework to control unconstitutional conduct"?
5. Was it likely that the Board Members' actions would result in a damages lawsuit?
6. Was the revocation hearing truly adversarial?
7. Can Ms. Boismier attack the Board Members' decision on appeal?

---

federal claims in federal court. *Wittenberg v. Oklahoma Health Care Auth.*, 781 F. Supp. 2d 1221, 1239–40 (N.D. Okla. 2011) (dismissing on quasi-judicial-immunity grounds § 1983 claims and a tortious interference with contract claim). And in any event, Oklahoma law recognizes a similar kind of immunity for the discretionary actions of public officers. *Mills v. Smith*, 355 P.2d 1064, 1066 (Okla. 1960). ("[W]hen a public officer is engaged in a quasi-judicial duty involving discretion, he [is] immune from liability for his acts, if they are within his jurisdiction, or lawful authority, regardless of his motive."). So the Court's analysis applies to all of Ms. Boismier's claims against the former board members.

[15] The Court synthesizes two tests that the Tenth Circuit has dictated to be used for determining whether a quasi-judicial body deserves absolute immunity. *Compare Horwitz*, 822 F.2d at 1512–13 *with Moore v. Gunnison Valley Hosp.*, 310 F.3d 1315, 1317 (10th Cir. 2002).

*Horwitz*, 822 F.2d at 1512–13; *Moore v. Gunnison Valley Hosp.*, 310 F.3d 1315, 1317 (10th Cir. 2002). Some of these considerations favor Ms. Boismier. Most don't.

The first factor favors Ms. Boismier. While the hearing officer supported her initial conclusions with several cases, the Board Members' order revoking Ms. Boismier's certification appears not to cite any precedent at all. *Compare* [Doc. No. 44-1 at 5–6] *with* Doc. No. 44-2.

The second factor is neutral. The Board Members, other than Mr. Walters, whom Oklahoma voters elected, were appointed by the Governor. OKLA. CONST. art. VI, § 1(A); OKLA. STAT. tit. 70 § 3-101 (A). And given the amount of public discourse concerning this ordeal, it might be desirable to limit outside influence (from courts like this one). But concerning harassment, Ms. Boismier alleges that she was the one in need of protection from harassment. Doc. No. 44 at 17–18. This factor thus points both ways.

The third factor favors immunity. When conducting revocation proceedings, the Board functions much like a court; a hearing officer presides, two sides present evidence, the officer draws up preliminary findings and conclusions, and the Board can step in to modify them as appropriate. Okla. Admin. Code 210:1-5-6(f). That is the crux of "quasi-judicial." *See Quasi-Judicial*, Black's Law Dictionary (12th ed. 2024) ("Of, relating to, or involving an executive or administrative official's adjudicative acts.").

Ms. Boismier doesn't contest any of this; instead, she draws the line between the formal process of the revocation hearing with the Board's later intervention to modify the hearing officer's findings and conclusions and revoke Ms. Boismier's certificate. Doc. No. 53 at 14–15. But there's little reason to distinguish those events because both are properly

part of a revocation proceeding. Okla. Admin. Code 210:1-5-6(g)(2) ("[T]he Board may take action to accept, reject, or modify the proposed Findings and Conclusions of the hearing officer."). And even if it made sense to distinguish these two acts, the Tenth Circuit has concluded that a board's summary reversal of a hearing officer's initial conclusion doesn't strip the board of immunity. *Horwitz*, 822 F.2d at 1513 ("Dr. Horwitz would confine the absolute immunity doctrine . . . to the hearing officer only. We disagree."). So too here. The Board's power to review the hearing officer similarly smacks of quasi-judicial review. *See Tapia v. City of Albuquerque*, No. CIV 13-0206 JB/ACT, 2014 WL 2757519, at *11 (D.N.M. May 31, 2014) ("Defendant Board could either affirm, deny, modify or remand the Hearing Officer's recommendations, similar to a reviewing court of law.").

The fourth factor favors immunity. The Board's regulations are replete with safeguards to control unconstitutional conduct. Ms. Boismier had the right to a hearing, notice of the hearing, the right to respond, the right to representation at the hearing, the right to disqualify members of the Board on impartiality grounds, and the right to petition for rehearing. Okla. Admin. Code 210:1-5-6(f); OKLA. STAT. tit. 75, § 309; *see Devous v. Campbell*, No. 92-8063, 1994 WL 7111 at *1 (10th Cir. Jan. 13, 1994) (unpublished) (concluding that the state had "sufficient regulatory safeguards" where the Wyoming Supreme Court had overturned a State Medical Board decision based on Doctor's argument that the Board "suspend[ed] his license merely because he invoked his Fifth Amendment rights at a hearing").

The fifth factor favors immunity. Because this proceeding ended with the Board stripping Ms. Boismier of her ability to teach in Oklahoma, she was, she says, unable to

engage in her preferred profession, both inside and outside Oklahoma. Doc. No. 44 at 29–30. Actions that impact someone's career and make it harder for them to earn a living can naturally result in litigation. *Moore*, 310 F.3d at 1317 ("The mere existence of this lawsuit warns of the potential harassment members of [a quasi-judicial body] potentially face.").

The sixth factor favors immunity. At least before the Board Members intervened, Ms. Boismier received the benefit of an adversarial proceeding. Doc. No. 44 at 21¶ 110. The Board Members had an attorney, and so did she. A hearing officer presided, eventually concluding that Ms. Boismier's certificate should not be revoked. Doc. No. 44 at 23 ¶¶ 118–121. To be sure, the Board Members made quick work of the hearing officer's recommendation—fully reversing her position and revoking Ms. Boismier's certificate—but that doesn't render the entire proceeding non-adversarial. *See Saavedra v. City of Albuquerque*, 73 F.3d 1525, 1530 (10th Cir. 1996) (concluding that a hearing was adversarial where there was a "right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses," along with a neutral hearing officer—despite the board's authority to later modify the hearing officer's decision).

The final factor favors immunity. Ms. Boismier had the right to seek judicial review of this proceeding in Oklahoma District Courts and the right to review by the Oklahoma Supreme Court. OKLA. STAT. tit. 75, § 318; 323.

Weighing all these considerations together, the Court concludes that the Board Members deserve immunity. Only one factor seriously supports Ms. Boismier, the allegation that the Board eschewed precedent when reforming the hearing officer's conclusions. Five factors support the Board Members' immunity. Though case law is thin

when it comes to *school* board members, decisions concerning other administrative boards are instructive. *See, e.g.*, *Saavedra*, 73 F.3d at 1530 (immunizing City personnel board because (1) the hearing was "adversarial," with the right to present evidence, provide testimony, and cross examine witnesses"; (2) "[t]he Board either affirms, denies, modifies, or remands the [hearing officer's] decision, similar to a reviewing court of law," and (3) "constitutional violations can be corrected on appeal to the state district court"); *Dobson v. Anderson*, No. CIV-06-479-WFD, 2008 WL 183080, at *4 (E.D. Okla. Jan. 17, 2008) (immunizing "the Oklahoma Insurance Commissioner and her employees" because they acted in a judicial or prosecutorial role in a "quasi-judicial" proceeding "governed by [the Oklahoma Administrative Procedures Act]"); *Lewis v. Oklahoma State Bd. of Chiropractic Examiners*, No. CIV-08-0382-HE, 2008 WL 2570968, at *2 (W.D. Okla. June 24, 2008) (immunizing members of the State Board of Chiropractic Examiners from a money-damages suit for actions taken revoking plaintiff's license).

Ms. Boismier's arguments against immunity fail to persuade the Court. Her main argument here is that the Board lacks the express power to act quasi-judicially. She's right that sometimes a statute will expressly grant a board the power to act quasi-judicially, and that no such statute exists for the Board. But Oklahoma law substantively provides the Board with quasi-judicial power, even if it doesn't use those precise words. Okla. Admin. Code 210:1-5-6; OKLA. STAT. tit. 75 §§ 250.3(3); OKLA. STAT. tit. 70 § 3-104(A)(6); *Kirschstein v. Haynes*, 788 P.2d 941, 949 (Okla. 1990). ("In . . . a proceeding [pursuant to the Oklahoma Administrative Procedures Act] there would be little, if any, question that the proceedings are conducted in a manner like those before a court.").

While she makes over a dozen constitutional and state tort law arguments as to why the Defendants' actions here were illegal, the core of Ms. Boismier's complaint concerns only her teaching certificate. Doc. No. 44 at 24 ¶¶ 123–26. Her Complaint's broad factual scope belies its narrow legal focus, making the case for immunity particularly strong. *See Jackson v. Slater*, No. CIV-25-841-D, 2026 WL 2925364, at *5 (W.D. Okla. Sept. 29, 2026) (declining to immunize for state-law claims based on allegations that "happened, either fully or partially, outside the hearing setting"). So even if Ms. Boismier is correct that the Board's action was illegal sixteen different ways, the Board Members deserve immunity for the limited purpose of protecting their administrative decisions. And the Court thus limits its inquiry only to those plausibly alleged facts. [16]

* * *

[16] The only allegations concerning conduct that didn't directly relate to her revocation proceeding concern two letters that Mr. Walters wrote before he became the Superintendent of Public Instruction calling for the immediate revocation of Ms. Boismier's certificate. Doc. No. 44 at 17–18. But Ms. Boismier may not support her claims against Mr. Walters with these two letters because she's already had her bite at the apple. A few years ago, Ms. Boismier sued Mr. Walters for defamation, and the court there noted that these two "letters [were] the only evidence of [Mr. Walters's] specific commentary on [Ms.] Boismier." *Boismier v. Walters*, 777 F. Supp. 3d 1300, 1309 (W.D. Okla. 2025). Since she previously sued Mr. Walters for defamation on these two letters, any argument she raises here against Mr. Walters based on them is likely precluded. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239–40 (10th Cir. 2017) (noting that a plaintiff may not sue a second time to assert any claims based on the same transaction or occurrence for which they previously sued the same party and received a valid final judgment on the merits); *see Boismier*, 777 F. Supp. 3d at 1309; 1318 (granting Mr. Walters summary judgment on Ms. Boismier's defamation claim against him based on the same two letters Ms. Boismier cites); *C&M Res., LLC v. Extraction Oil & Gas, Inc.*, 159 F.4th 755, 765 (10th Cir. 2025) ("[I]t is well established that a court may raise the issue of preclusion on its own motion, in appropriate cases.") (citation modified).

The Court recognizes that the Board here isn't a "classic" adjudicatory entity, but the Supreme Court has said that where a board provides crucial procedural safeguards—including the ability to appeal constitutional errors to the State judicial system—that board's members deserve absolute immunity from suits seeking money damages.[17] *Cleavinger v. Saxner*, 474 U.S. 193, 203–04; 206 (1985).

**CONCLUSION**

Accordingly, the Court DISMISSES all Ms. Boismier's claims against the Board and the Department, DISMISSES all but requests (1) and (2) for injunctive relief against the Superintendent in his official capacity, and DISMISSES all Ms. Boismier's claims against the former Board Members in their individual capacities.

The Court ORDERS the parties to submit supplemental briefing in 21 days regarding the following question: Whether the Court ought to abstain on requests (1) and (2) under *Younger* until Ms. Boismier's ongoing state proceeding is resolved.

IT IS SO ORDERED this 23rd day of October 2026.

David L. Russell
**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**

[17] To the extent Ms. Boismier seeks declaratory relief from the former Board Members, those claims too must fail. *Chilcoat*, 41 F.4th at 1214. ("Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief.").